# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES G. DAWSON, *et al.*, | CASE NO. 1:14-CV-1383 |
| Plaintiffs, | |
| v. | MAGISTRATE JUDGE<br>NANCY A. VECCHIARELLI |
| CITY OF RICHMOND HEIGHTS, *et al.*, | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

This case is before the undersigned United States Magistrate Judge upon the consent of the parties.  (Doc. No. 8.)   This case was removed from state court by Defendants City of Richmond Heights ("City") and Richmond Heights Building Commissioner Philip Seyboldt ("Seyboldt"), in his official capacity (collectively, "Defendants").  (Doc. No. 1.)  Currently pending before the Court are the motions for summary judgment filed by Defendants and Plaintiffs, James and Carol Dawson.  (Doc. Nos. 39, 40.)  For the reasons set forth below, this case is REMANDED to state court.

## I.  BACKGROUND

### A.  Relevant Factual Background

This case arises out of the parties' dispute regarding a search warrant obtained by Defendants to permit dye testing of the sanitary and storm sewer systems located on Plaintiffs' property at 4881 Foxlair Trail in Richmond Heights.  Dye testing is a process used to determine whether "roof water, surface or subsoil drainage or other clean waste," which is generally disposed of via the storm sewer system, is "cross-contaminating," or entering, a sanitary sewer system.  (Affidavit of Philip Seyboldt

("Seyboldt Aff.") at ¶¶ 9, 11(a), Doc. No. 40-8.)  The testing "involves the introduction of dyed water into storm and sanitary sewer systems at various locations on a particular property," including the down spouts, floor drains and toilets.  (*Id*. at ¶ 11(a).)  The path of the dyed water is observed at the cleanouts and inspections tees located where the property's storm and sanitary sewer systems connect to the systems maintained by the City.  (*Id*. at ¶ 11(b).)  Where dye that was placed in a property's storm sewer system is observed in the sanitary sewer connection, or where dye that was placed in a property's sanitary sewer system is observed in the storm sewer connection, it is likely that cross-contamination is present.  (*Id*. at ¶ 11(c).)  The discharge of waste that would typically flow into the storm sewer system into the sanitary sewer system "can overload the sanitary sewer system," and cause the sanitary sewer system to back up into the basements of homes and other buildings.  (*Id*. at ¶ 7.)  The City has enacted an ordinance, Richmond Heights Codified Ordinance ("RHCO") 931.03, that prohibits property owners from allowing the "discharge into the sanitary sewers of the City any roof water, surface or subsoil drainage or other clean waste water, or discharge into the storm sewers or drain of or within the City any sanitary sewage or industrial wastes. (Complaint at Ex. D., Doc. No. 40-3.)

Another ordinance, RHCO 931.99, prescribes a penalty for violating RHCO 931.03:

> Whoever violates any of the provisions of this chapter is
> guilty of a misdemeanor of the first degree for each offense.
> A separate offense shall be deemed to have been
> committed each period of twenty-four hours such violation
> shall continue after a period of thirty days following the
> original conviction.

2

Plaintiffs refer to the final sentence of RHCO 931.99 as the "separate offense clause."

In 2011, after preliminary testing indicated that there was likely cross-contamination of the sewer systems in the Snavely-Gleeten-Rachel neighborhood of Richmond Heights, the City began working with the Cuyahoga County Department of Public Works ("Department of Public Works") to perform dye testing on homes in that neighborhood. (*Id*. at ¶ 9, 12.) Defendants assert that Plaintiffs' home is located in the Snavely-Gleeten-Rachel neighborhood. (*Id*. at ¶ 10.)[1]

On September 12, 2013, Seyboldt appeared before Lyndhurst Municipal Court Judge Mary Kaye Bozza and signed an affidavit in support of a search warrant. (Seyboldt Aff. at ¶ 16.) Generally, Seyboldt averred that Plaintiffs' property was not in compliance RHCO 931.03, and that Plaintiffs had failed to respond to numerous communications from the City and the Department of Public Works instructing Plaintiffs to schedule dye testing on their property. (Affidavit in Support of Search Warrant ("Search Warrant Aff."), Doc. No. 40-8.) With respect to the City's efforts to schedule an appointment for testing, and as relevant to Plaintiffs' claims in this case, paragraph 8 of the affidavit stated:

> Affiant avers that the Cuyahoga County Department of Public Works has advised affected homeowners via regular, first-class mail that the County has concerns of a possible cross-connection at 4881 Foxlair Trail due to an expedited dye test performed by the County in 2012 in which flow from the downspouts came through the sanitary lateral into the

---

[1] Plaintiffs contend, without citing to any evidence in support, that their property is not located n the Snavely-Gleeten-Rachel neighborhood. (Doc. No. 42 at 2.) Defendant have provided some evidence in response, including a map of the are of Plaintiffs' property. (Doc. No. 44-2.) Given, however, that this Court is remanding this case to state court, it is not necessary to resolve this issue.

3

> sanitary sewer main indicating a possible route for storm water to flow into the sanitary system and that the County had included the Property on its list of houses to receive more detailed dye testing.

(Search Warrant Aff. at ¶ 8.)

On September 12, 2013, Judge Bozza signed a search warrant authorizing the search of Plaintiffs' property. (Seyboldt Aff. at Search Warrant.) On September 17, 2013, Seyboldt and a Richmond Heights police officer executed the search warrant on Plaintiffs' property. (Seyboldt Aff. at ¶ 17.) They were accompanied by employees of the Department of Public Works, who performed dye testing on Plaintiffs' storm and sanitary sewers. (*Id*. at ¶ 19.) The dye testing revealed that water from the property's down spouts was present in the sanitary sewer connection tee. (*Id*. at ¶ 19(d), Test Results.)

**B.     Procedural Background**

In May 2014, Plaintiffs filed a nine-count complaint in state court. (Complaint, Doc. No. 1-1.) The Complaint sought declaratory judgment, injunctive relief, and equitable restitution under Chapter 2721 of the Ohio Revised Code. (*Id*. at ¶ 1.) The Complaint alleged that the search warrant issued by Judge Bozza violated the Fourth Amendment of the United States Constitution and Article I, § 14 of the Ohio Constitution, and that RHCO 931.03 and 931.09 were unconstitutional. (*Id*. at ¶ 3.) Specifically, with respect to the search warrant, the Complaint requested declaratory judgment that: (1) the warrant was not based on probable cause and failed to comply with Ohio Revised Code § 2933.23 because it did not describe the property to be searched (Count One, ¶¶ 33-45); (2) Defendants failed to comply with Ohio Criminal

4

Rule 41(C)(2) because the warrant was not directed to a law enforcement officer and Defendants did not execute the warrant within the required time period (Count Two, ¶¶ 46-49); and (3) Defendants failed to comply with Ohio Revised Code Chapter 2933 by failing to properly return the warrant to Judge Bozza after conducting the search (Count Three, ¶¶ 50-59).  With respect to the codified ordinances, Plaintiff sought declaratory judgment that: (1) RHCO 931.03 is unconstitutional because it is void for vagueness (Count Four, ¶¶ 60-65); (2) because RHCO 931.03 contains no culpability element, the required culpability element for the offense it defines is reckless, and Plaintiffs did not act recklessly (Count Five, ¶¶ 66-70); (3) the separate offense clause of RHCO 931.99 violates due process because the ordinance "define[s] that a defendant is guilty for allegedly violating a city ordinance" (Count Six, ¶¶ 71-73); and (4) the separate offense clause of RHCO 931.99 violates double jeopardy because the same conducts constitutes separate offenses (Count Seven, ¶¶ 74-76).  Finally, the Complaint seeks injunctive relief – prohibiting Defendants from enforcing RHCO 931.03 against Plaintiffs (Count Eight, ¶¶ 77-81) – and equitable restitution in the amount that Plaintiffs were required to expend to repair their front lawn after Defendants completed the dye testing (Count Nine, ¶¶ 82-88).

In June 2014, Defendants filed a notice of removal, removing the case to this Court.  (Doc. No. 1.)  Plaintiffs did not contest the removal at that time.  In July 2014, the parties consented to the jurisdiction of the magistrate judge.  (Doc. No. 8.)  Thereafter, Defendants filed an Answer and Counterclaim, in which they generally denied the allegations in the Complaint, and sought injunctive relief prohibiting Plaintiffs from continuing to violate RHCO 931.03 and requiring Plaintiffs to repair the sewer on

5

their property. (Doc. No. 10.)

In August 2014, a dispute arose between the parties regarding who represented Defendants. (*See, e.g.,* Doc. No. 11.) After a hearing on the issue, this Court stayed proceedings to allow a state court to determine issues related to legal representation. (Doc. No. 16.) In December 2014, the Court lifted the stay after ascertaining from Defendants that the state court case had been dismissed. (Doc. No. 33.)

In May and June 2015, the parties filed motions for summary judgment in this case. (Doc. Nos. 39, 40.) In July 2015, this Court directed the parties to file supplemental briefs addressing "whether this Court has original jurisdiction over the claims asserted in the Complaint; the construction of the Complaint each party proposes; and whether the case was properly removed from state court." (Doc. No. 46.) Thereafter, the parties filed supplemental briefs addressing the issues identified in the Court's Order. (Doc. Nos. 47, 48.)[2]

## II. Law and Analysis

It is axiomatic that a federal court must assure itself of its own subject matter

---

[2] Apparently in response to this Court's Order, Plaintiffs filed a "motion to dismiss and remand for lack of subject matter and personal jurisdiction." (Doc. No. 48.) In their filing, Plaintiffs' contended that the Court lacks both subject matter jurisdiction and personal jurisdiction over this case, and request that this Court dismiss and/or remand this matter to state court. (*Id*.) On August 3, 2015, the Court issued an Order striking Plaintiffs' filing "to the extent that it request[ed] dismissal or remand of this matter to state court on any ground other than subject matter jurisdiction and to the extent that it assert[ed] any claim of lack of personal jurisdiction." (Doc. No. 49.) The Court indicated that it would construe Plaintiffs' filing as their supplemental brief regarding subject matter jurisdiction in this case. (*Id*.)

6

jurisdiction in each case, and may raise the issue of subject matter jurisdiction *sua sponte* at any time. *In re Millers Cove Energy Co., Inc.*, 128 F.3d 449, 450 (6th Cir. 1997). The party that removes a case from state court bears the burden of establishing federal jurisdiction. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th cir. 1994). In this case, the Court raised the issue of subject matter jurisdiction *sua sponte* because, on its face, Plaintiffs' complaint, which Defendants removed from state court, seeks relief under Ohio's declaratory judgment statute and does not invoke any federal code provision.

Where, as in this case, there is no diversity between the parties, a defendant may remove a state court action to federal court only if the plaintiff's allegations establish that the district court has "original jurisdiction" over the action because it involves a federal question. 28 U.S.C. § 1441(a). Defendants contend that this Court has federal question jurisdiction in this case under 28 U.S.C. §§ 1331 and 1343(a)(3). Section 1331 grants federal district courts original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1343(a)(3) grants the district courts original jurisdiction in "any civil action authorized by law to be commenced by any person . . . to redress the deprivation, under color of any State law, statute, [or] ordinance . . . of any right, privilege or immunity secured by the Constitution of the United States . . ." and "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ."

To determine whether a complaint was properly removed on the basis of federal question jurisdiction, a district court examines "the 'well pleaded' allegations of the complaint" and ignores "potential defenses." *Beneficial Nat'l Bank v. Anderson*, 539

7

U.S. 1, 6 (2003). "Although the well-pleaded-complaint rule focuses on what the plaintiff alleges, it allows a court to look past the words of a complaint to determine whether the allegations, no matter how the plaintiff casts them, ultimately involve a federal question." Ohio ex rel. Skaggs v. Brunner, 549 F.3d 468, 475 (6th Cir. 2008). Federal question jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). In this context, federal question jurisdiction exists "only when there is not only a contested federal issue, but a *substantial one*." Eastman v. Marine Mech. Corp., 438 F.3d 544, 552 (6th Cir. 2006) (internal quotation marks omitted) (emphasis added).

A defendant seeking to remove a state case on the basis that a state law claim actually raises a substantial federal question faces a high burden. The Sixth Circuit has determined that a substantial federal question "involves the interpretation of a federal statute that is actually in dispute in the litigation and is so important that it sensibly belongs in federal court." Id. Further, "[t]he substantial-federal-issue exception opens the federal removal door only if '(1) the state-law claim . . . necessarily raise[s] a disputed federal issue; (2) the federal interest in the issue [is] substantial; (3) the exercise of jurisdiction [will] not disturb any congressionally approved balance of federal and state judicial responsibilities." Skaggs, 549 F.3d at 476 (quoting Mikulski v. Centerior Energy Corp., 501 F.3d 555, 568 (6th Cir. 2007)) (alterations in original). Mere reference to or reliance on a federal statute is not sufficient. See, e.g., Eastman,

8

438 F.3d at 553-54 (determining that the plaintiff's reference – in his state law wrongful termination claim – to federal law as a basis for asserting that his termination violated public policy was not sufficient to create a substantial federal question).

Here, Defendants contend that Counts One, Four, Six and Seven – which request relief under Ohio's declaratory judgment statute regarding the constitutionality of the search warrant and of RHCO 931.03 – assert claims under 42 U.S.C. § 1983 or involve substantial federal questions that fall within this Court's original jurisdiction under § 1331 and/or § 1343(a)(3). According to Defendants, this Court has original jurisdiction over the claims asserted in Counts One, Four, Six and Seven because "a reviewing Court cannot resolve [these counts] without answering a federal question or determining whether a person acting under state law deprived" Plaintiffs of their constitutional rights. (Doc. No. 47 at 6.) Similarly, Defendants assert that Counts Eight and Nine – which request injunctive and equitable relief on the basis that Defendants violated Plaintiffs' constitutional rights – seek relief under § 1983 and, thus, fall under this Court's original jurisdiction under § 1343(a)(3).[3] Specifically, Defendants contend that, because Counts Eight and Nine include allegations that Defendants, the City and one of its officials, violated Plaintiffs' constitutional rights, these counts necessarily assert claims under § 1983 and, thus, fall under this Court's original jurisdiction.[4]

---

[3] Defendants concede that Counts Two, Three and Five assert state law claims that do not fall under this Court's jurisdiction. (Doc. No. 47 at 8-9.)

[4] Considered as a whole, Defendants' arguments in this case are not consistent. On the one hand, to invoke this Court's jurisdiction, Defendants urge that Plaintiffs' claims should be construed to assert claims under § 1983. On the other hand, in their opposition to Plaintiff's motion for summary judgment, Defendants argue that Plaintiffs' claims fail under § 1983 because Plaintiffs failed to allege sufficient facts to support

Defendants do not offer a complete analysis of the relevant questions with respect to federal question jurisdiction in this case.  For example, Defendants do not explain whether or how the federal interests at issue in the Complaint are substantial.  *See, e.g.,* *Mikulski*, 501 F.3d at 570 (noting that the four aspects of case or issue that affect the substantiality of the federal interest are whether: (1) the dispute involves a federal agency; (2) the federal question is not trivial; (3) a decision on the federal question will resolve the case; and (4) a decision as to the federal issue will control numerous other cases").  They do not explain whether or why a federal statute is in dispute, such that the resolution of that dispute will resolve the parties' claims.  *See, e.g., Id.* at 569-70 (finding, in that case, that there was a federal statute in dispute because the resolution of the parties' claims depended upon the interpretation of the meaning and applicability of a particular federal statute).  They do not explain why these claims "sensibly belong[] in federal court," *Eastman*, 488 F.3d at 552, particularly given that "[s]tate courts are competent to decide questions arising under the federal constitution." *Deane Hill Country Club v. City of Knoxville*, 379 F.2d 321, 325 (6th Cir. 1967).  Nor do Defendants cite to any authority holding that a claim asserting the deprivation of a constitutional right by a public official automatically converts that claim to one under § 1983.

---

liability under that statute as required by *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978).  In other words, Defendants ask this Court to construe Plaintiffs' Complaint to assert claims that, on its face, the Complaint does not properly state.  Rather than construing the claims as Defendants suggest, this Court considers the lack of *Monell* allegations (as well as the fact that Plaintiffs brought suit against Seyboldt in his official capacity, which is merely a reiteration of the claims against the City) as further evidence that the Complaint does not assert claims that arise under federal question jurisdiction.

10

Further, although Defendants assert that Plaintiffs' Complaint contains "federal law claim[s] in disguise," (doc. no. 47 at 8), Defendants do not offer any analysis to support that argument.[5]  On its face, the Complaint seeks either declaratory relief under an Ohio statute or equitable relief that the courts of Ohio are competent to grant.  In sum, Defendants offer no reasonable basis to conclude that any Plaintiffs' claims fall within this Court's federal question jurisdiction, particularly in light of the "well-pleaded allegations" in the Complaint.  Accordingly, Defendants have failed to satisfy their burden of demonstrating federal question jurisdiction over Plaintiffs' claims in this matter.  Given that no other basis for federal subject matter jurisdiction exists in this case, this Court must REMAND this case to state court.

### III.  CONCLUSION

For the foregoing reasons this case is REMANDED to state court.

**IT IS SO ORDERED**.

                                          s/ *Nancy A. Vecchiarelli*
                                          U.S. Magistrate Judge

Date: August 14, 2015

---

[5] The relief requested by Plaintiffs in Counts One, Four, Five, Six and Seven – *e.g.,* that the search warrant be declared invalid and that the results of the testing performed in September 2013 be excluded from any state court criminal proceeding as a result – demonstrate that these counts assert state law claims, as § 1983 contemplates only damages and equitable relief, not the ability to invalidate or undermine state criminal proceedings.  *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 438 (1994) (holding that claims that "call into question the lawfulness of a conviction or confinement" are not cognizable under § 1983).